(87 Misc. Rep. 55)

### BARNES v. ROOSEVELT.

(Supreme Court, Special Term, Albany County. September, 1914.)

1. VENUE (§ 24*) — RESIDENCE OF PARTIES — RIGHT TO SUE IN COUNTY OF PLAINTIFF'S RESIDENCE.

Under Code Civ. Proc. § 984, providing that an action not specified in the two preceding sections must be tried in the county in which one of the parties resided at the commencement thereof, plaintiff, in an action for libel, had a right to lay the venue in the county of his residence.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 38; Dec. Dig. § 24.*]

2. VENUE (§ 68*)—MOTIONS TO CHANGE PLACE OF TRIAL—SUFFICIENCY OF EVIDENCE.

On a motion to change the place of trial of an action for libel brought by an influential political leader, who was for many years a member of the Republican state committee from Albany county, and who also owned a majority of the stock in a corporation publishing a newspaper in the city of Albany, against an ex president of the United States, who had also had a distinguished public career, in which it was claimed that the trial would· involve the determination of political questions, evidence *held* insufficient to show that political considerations had entered into the selection of juries in Albany county, that an impartial trial could not be had in that county, or that any greater difficulty in procuring a fair jury would be encountered than that which would be experienced in any other county because of the prominence of the parties and the influence which they had exercised.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 121; Dec. Dig. § 68.*]

Action by William Barnes against Theodore Roosevelt. On motion to change the place of trial. Motion denied.

Bowers & Sands, of· New York City (John M. Bowers and W. H. Van Benschoten, both of New York City, of counsel), for the motion.

Ivins, Wolff & Hoguet, of New York City (Wm. M. Ivins and Harold J. Roig, both of New York City, of counsel), opposed.

CHESTER, J. The action is for damages for an alleged libel claimed to have been published by the defendant concerning the plain-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff. The plaintiff resides in the county of Albany, and has laid the venue in that county. The defendant moves to change the venue under subdivision 2 of section 987 of the Code of Civil Procedure, which provides that the court may change the place of trial "where there is reason to believe that an·impartial trial cannot be held in the proper county."

[1] It was the plaintiff's right under the law to lay the venue in the county of his residence, and that of course was a proper county. The only other proper county in which the action could have been brought was the county of Nassau, where the defendant resides. Section 984, Code of· Civ. Pro. If the action had been brought in any other county of the state than in one of the two named, and the defendant had chosen to move the court to change the venue to Nassau county, there would have been no discretion left but to have so ordered unless on such an application it should have been made to appear that the convenience of witnesses would be promoted by having the cause tried in another county.

[2] Several grounds are urged in the moving papers as reasons for the order asked for. They are all aimed to convince the court that an impartial trial cannot be ·had in the county where the venue has been laid. The principal reasons urged in support of the motion are that prejudice exists against the defendant in Albany county, and that the political influence and dominance of the plaintiff in the county of his residence is such that the defendant will be unable to secure a fair and impartial jury there, as the trial will involve the determination of political questions. The action is, however, solely one in which the plaintiff seeks to recover damages for an alleged personal injury. Such an action should be determined free from any influence arising from the activities or sentiments of either the plaintiff or the defendant in or relating to partisan affairs. If any prejudice exists against either party, it is, I think, political and not personal, and it does not involve the merits of the controversy between them.

It is ·charged by the defendant that political considerations have entered into the selection of juries in Albany county. For proof of that assertion a copy of what is known as the "Bayne Report" is annexed to the moving papers. That was the report of a Senate Committee appointed by a Democratic Senate to investigate the affairs of the city and county of Albany, and among other things it was reported that the trial juries in that county—

"are selected according to their political affiliations, and that so many more Republicans are selected than those of a different political faith because of a settled policy to keep the civil judicial system under the control and influence of Republican leaders or subject to political prejudice."

The testimony upon which that report or that conclusion was based was ex parte in character, and was furnished by political partisans. The witnesses were not cross-examined and were not permitted to be cross-examined. The evidence was largely hearsay, and was of such a character that it would not have been received in a court of justice. More than this, it had relation to the jury list of 1911. It compared that list with the vote at the presidential election of 1908, rather than

at other elections where a much greater preponderance of Republican votes were cast. On reading the testimony on which the report was based, no other conclusion can be reached by any fair-minded man but that there was a strained effort to warp the truth with respect to the character of the jury panel for that year. Subsequent to that report a nonpartisan committee of the Albany County Bar Association was appointed at the request of the State Bar Association to make a report to the latter association upon the question as to whether any action was necessary or desirable as to the administration of justice in Albany county. That committee held a public session at the courtroom, to which the public generally was invited, for the purpose of hearing grievances and suggestions or recommendations on the part of any one upon the subject. Notice was given to every member of the county bar association and special and extended notices were published in the columns of the local newspapers inviting suggestions. Notice was also served upon various organizations, including some 40 labor organizations, inviting their membership to appear and give their views. After all this the report of the committee contained no criticism of the jury system as administered under the law relating to the county of Albany. The only change recommended was an amendment of the law to permit fewer exemptions from jury service, in the hope that the intellectual standard of jurors might be elevated.

But whatever the fact was in reference to the trial jury panel of 1911 against which the criticisms of the Bayne report were aimed, it can be of no consequence now, for under the law a new jury list is made up for each year, and the present panel is not the one criticized.

In Albany county there is a commissioner of jurors, who makes up the jury lists. He is appointed by a board consisting of the Justices of the Supreme Court residing in the county and the county judge. Chapter 441, Laws 1899, as amended by chapter 320, Laws 1900. Acting as a member of that board, I take my full share of the responsibility for the appointment and the reappointment of the present commissioner of jurors, Mr. Thomas J. Wood, who has served continuously in that office since 1896. He is a man of high character, whose personal integrity has never to my knowledge been questioned. He has not only been instructed by the board which appointed him, but he has presented his affidavit upon this motion that the political opinions of men on the jury lists have never had anything to do with his work in making up the lists or in passing upon qualifications for or exemptions from jury service.

The plaintiff's counsel has presented proof on this motion of a partial examination of the present jury list, which clearly shows that, so far as the political inclinations of the men upon it are concerned, they fairly and proportionately represent each of the political parties in the county.

Several very respectable members of the Progressive party, including several lawyers, with but limited experience in jury trials, however, have presented affidavits on behalf of the defendant that in their opinion he cannot secure a fair trial here. On the other hand, the plaintiff has furnished the affidavits of ten lawyers of large practice at this bar

of differing political faiths, as well as of several bankers, clergymen, and physicians distinguished in the social, professional, and religious life of this community, stating that they know of no reason why the defendant may not have a fair trial here. In view of these divergent opinions, which have been given fair consideration, I may be permitted to venture an opinion as to jury trials generally in this county. A somewhat extended service upon the bench and in presiding over jury trials here and in many other counties of the state leads me to believe that juries in Albany county discharge the difficult duties cast upon them as fairly and as well as those of any other county where trials by jury have come under my observation. Jurors here are rather above the average in intelligence, disagreements are rare, and verdicts are, as a rule, fairly within the evidence in the cases tried.

The further claim is made that the county clerk, the sheriff, the recorder, and the county judge, who are or may be concerned in the drawing of jurors from the jury list for service at terms of court, are partisan adherents of the plaintiff, holding their respective offices by virtue of his favor, and therefore that they would not be safe men to trust with their duties in relation to drawing juries under the law. Each of these officers denies that the plaintiff has ever influenced or attempted to influence his official conduct. The plaintiff likewise so swears. No claim has been made that the Justices of the Supreme Court residing within the county, who also upon occasion attend upon the drawing of jurors, would not properly discharge such duties. It should be borne in mind that none of these men make the jury lists. They are made up annually by the commissioner of jurors as stated, and are composed of from 3,500 to 4,000 citizens of the county, having the qualifications required by law for jury service. From the last of these annual lists, made up before the present action was commenced, the list of jurors for the trial terms in this county must be drawn. The county clerk, who publicly and after due notice draws names of jurors from the box in the presence of some of the other officers named, could not, if he would, select any favorites of the plaintiff if any such there are. Under the law pertaining to this county three panels of jurors containing 36 names each are drawn for each term. Judiciary Law (Consol. Laws, c. 30) § 513. The first panel serves the first week of the term, the second the second week, the third the third week, and if the term continues longer than that, jurors may be required by the court to serve longer than one week each during the term. In a case attracting some public interest it might happen that a panel of 36 would be insufficient from which to select such a fair and impartial jury, as the parties are entitled to have. In that event it is within the power of the court presiding at the term to require an extra panel to be drawn in open court from the jury box, under all the safeguards which would surround such a drawing. Judiciary Law, §§ 527, 528. I cannot bring my mind to the conclusion that the county clerk or any of the other men concerned in drawing jurors for this county would commit, or would be inclined to commit, a crime because of any friendship they might have for the plaintiff, or because of any influence he might have over them. We have even had a trial jury in this county recently convict a citizen of

some prominence of the crime of improperly attempting to influence a juror with respect to his verdict. That does not furnish much encouragement for any one else, no matter how prominent, to attempt a crime of a kindred character here.

It is also urged that the plaintiff, who is the owner of a majority of the stock of the Journal Company, that publishes the Albany Evening Journal, has published in that paper numerous articles calculated to prejudice the public against the defendant. It appears that numerous articles critical of the political views or policies of the defendant have been published in that paper, some of which have been copied from other newspapers. A large proportion of them were published before this action was commenced. The plaintiff claims that he published them as a servant of public opinion opposed to the defendant's theories and policies, and that they were not intended or designed to create any prejudice against the defendant, but that their design was to declare the truth with respect to his political purposes and, so long as they were not false or slanderous, were within plaintiff's rights as a journalist. It does not appear that in any of them the merits of the present controversy have been discussed. They fail to show, therefore, that the plaintiff has, by means of them, endeavored to influence or prejudice the public against the defendant with respect to the merits of this action, which is the essential thing if they are to have weight as a ground for a change of venue.

I can readily see that it would be somewhat difficult to procure a jury in any county to try this case because of the prominence of the parties and the influence they have exercised rather than because of the subject-matter of the action. The plaintiff has been active in the state and national conventions of his party for some time, and has been an influential political leader. He has been a member of the Republican state committee from Albany county for many years, and for the last three years, the chairman thereof. He also represents the State of New York in the Republican National Committee. The defendant has also had a distinguished public career, and has also exercised great influence as a political leader. He served for a time as a member of the Assembly as a young man, and lived in this city. He served for two years as Governor of the state, during which time he also resided here. He served as Vice President and President of the United States, holding the latter office for nearly two full terms. Since retiring from the office of President he has been a candidate for President, and has been much in the public eye during all that time. He has many loyal and devoted supporters of his political views in this county. He has also been severely criticized in this county by individuals and in the public prints. This is true also of the entire state. If we are to judge by comparisons, he has undoubtedly exercised a much greater influence over individuals in his public career than the plaintiff. The plaintiff also has numerous loyal supporters of his political leadership among individuals and in the press throughout the state. On the other hand, he has been severely criticized for his political methods throughout the state. He has also stood in the way of the ambitions of many individuals of his party for promotion to public positions here who are or may be prej-

udiced against him because of that fact. In the city of Albany, the newspaper with which the plaintiff is connected has a considerable circulation, but several other newspapers are published here, having a joint circulation far in excess of plaintiff's paper, which have for a long time been critical of the plaintiff and his political activities. Taking into view all these matters, I believe that the defendant would be as likely to secure a fair jury in this county to try the case as would the plaintiff, and that, notwithstanding the great influence each of these parties have had at one time or another in this county, it would be as easy to secure a fair jury here as anywhere in the state, for the same difficulties that would confront them here would confront them in any other county for like reasons.

After a careful consideration of all the facts before me I am of the opinion that a fair and impartial jury can be found in this county to try the issues involved between these parties, or, to state the reverse of the proposition, I am not convinced from the moving papers, in the language of the Code, that "an impartial trial cannot be had" here.

This conclusion involves the exercise of discretion, and while the question of the convenience of witnesses has not been involved on this motion, yet there is one view of that question which it seems to me is proper to be considered. The answer of the defendant which is before me on this motion is a very voluminous document, and contains much matter which the plaintiff alleges is immaterial, extraneous, and irrelevant as a defense to the cause of action alleged in the complaint. It is not before me to decide whether these matters are immaterial, extraneous, or irrelevant, but if they are not and all the issues set up in the defendant's answer are to be tried out, it will involve the calling of a vast number of witnesses who reside in the county of Albany, or who are employed in state offices here, and I do not believe that these witnesses should be inconvenienced by being taken to a distant county to testify on the trial. While that question is not before me for decision on this motion, it seems to me proper to give it some weight, or to consider it as one element in exercising the discretion resting upon the court in determining the motion made by the defendant.

The motion should be denied with $10 costs.